Good morning, ladies and gentlemen. Our first case for argument this morning is Palmer v. Indiana University. Ms. Blegens. Good morning, Your Honors. May it please the Court. This case is on appeal following the grant of summary judgment by the District Court. We have an overarching issue on appeal, and that is that summary judgment should have been denied, given the disputed facts and unreasonable inferences made against Professor Palmer by the District Court. In addition to that overarching issue, we have two legal claims, inequitable pay and failure to promote, for both of those claims that Professor Palmer was discriminated against on the basis of his African American race as compared to his Caucasian counterpart, both of whom were non-tenured lecturers in the IU Kelley School of Business. Just a little bit about Professor Palmer's impressive background. He grew up in Indianapolis, and after achieving an engineering degree from Rose-Hulman, he began his illustrious career in marketing. Along the way, he earned his MBA from the IU Kelley School of Business and continued his career in marketing for almost 20 years, including managing hundreds of millions of dollars in revenue for his employers and overseeing the Star Wars toys for Mattel. He joined the Kelley School of Business at Bloomington in 2010 as a non-tenured track lecturer, after teaching some college business courses elsewhere. And as a lecturer at the Kelley School, he received numerous teaching awards, and he had very high student evaluation scores, which was the predominant factor in determining a lecturer. Ms. Clevens, time is short. We might actually want to get to the issues in this case. Sure. The reason you lost is the district judge concluded that the charge of discrimination was untimely, and it seems to be untimely by about six years. So that seems a pretty powerful problem. You need to address it. Sure. Your Honor, the reason why we believe that the claim was timely is because even though Professor Palmer had gone up for or sought to go up for early promotion three years before Mr. Gildee had done so, is that no other lecturers in the marketing department, as far as I know, had gone up for early promotion or sought to go up for early promotion between that period of time? I don't see what that has to do with this issue. The Supreme Court held in Amtrak against Morgan that for discrete claims of discrimination, the claim accrues on the time of the decision. That's 2013. I don't see how this claim can be timely unless we contradict Morgan. Well, except, Your Honor, there is such a thing as equitable totaling. And in this particular situation, Professor Palmer did not realize or believe that the reasons for him not going up for early promotion were based on his race until a Caucasian male who also— But look, the Supreme Court has said the time accrues with the discriminatory act, not when the plaintiff realizes there was discrimination, but when the act occurred. That's why I say, how can we rule in your favor without contradicting the decision of the Supreme Court that the claim accrues on the date of the act? Sure, but I believe that equitable tolling allows that act to—or the time to bring a claim to be on hold until the individual knows. I mean, Mr. Palmer— I don't think there's any such doctrine. The equitable tolling doctrine, I believe— No equitable tolling is a doctrine that applies when somebody, despite the exercise of best efforts, can't get evidence. It is not a doctrine that just says somebody can relax until somebody hits him in the face and says, you've been a victim of discrimination. And I totally agree with that. The claim doesn't start. I agree with that, Your Honor. You need to get the doctrine right. I agree with you on that, but Your Honor— Oh, I'm glad you agree with me. That's not what's important. I just stated the doctrine as it is, officially. I understand, Your Honor, but we believe that there was no way for Professor Palmer to know that the act of discrimination had occurred until the white male who had comparable factors as he was allowed to go out. Okay. Suppose Mr. Gilday wasn't hired until 15 years after 2013. Could Palmer sue in 15 years later, 20 years later, 30 years later? I think that's a hypothetical that doesn't exist in this case. Look, that's the reason why it's called a hypothetical. Right. But I'm trying to figure out what your theory implies. Your theory seems to be that if somebody is a victim of discrimination in 2013, he can sue any time into the indefinite future when anybody ever is treated better. Isn't that your theory? That is not my theory, Your Honor. So what is your theory? My theory in this case, Your Honor, is that there was no way for Professor Palmer to know it was based on race. I mean, in that period of time, there were no other persons who went up for early promotion. Let's come back to my question. Right. You would say until somebody is treated better, the person can't know there was any discrimination, and therefore you can wait indefinitely until somebody comes along who is treated better. That seems to be the implication of your position. I just wonder whether you're serious about that. Well, there's more evidence than that, than just that, you know, there was someone who was treated better. So I think that with everything that accrued and accumulated at that time, that that's when Professor Palmer knew that discrimination had occurred. I also think this court doesn't want someone to— Look, you're obviously unwilling to tackle my question, as phrased. So let me ask it a different way. Are you aware of any case saying that the time for suit is postponed until years later someone else is treated better? I'm not aware of a case law that says that, Your Honor. No, there isn't. Are you aware of any case in which the court says it is appropriate to compare the plaintiff against the treatment of somebody else years later? I believe that that has happened in cases. Do you have any case for that? And I still believe that equitable tolling would apply in this particular situation. Ms. Blevins? Yes. Even if one were to accept your position that the claim didn't accrue until February or April of 19, why is it that Mr. Palmer waited between one and three months after he had the claim? Well, Your Honor, in February he did—was when he first learned that Professor Gildee was up for early promotion. That's when he first learned about that. It was not finalized until April 9th of 2019, and he filed his charge of discrimination on May 14th. What was not finalized? His—Professor Gildee's promotion—early promotion to senior lecturer. I thought the position of Mr. Palmer was discrimination was noted before. There were certain elements of discrimination, but not the senior lecturer—the failure to promote claim that we have here. So you're saying— Which was strictly because of him not being promoted to senior lecturer. So we had to wait until Mr. Gildee got the position? Is that your position before equitable tolling? That's when Professor Palmer knew that the discrimination was based on his race. Didn't he— That's why I asked whether your position wouldn't be the same if Gildee had been hired 20 years in the future, 30 years in the future. And I think the answer has to be yes if you're serious. Well, Your Honor, all I would say is in this case that's not what happened, and what we have is that it happened in three years, and I understand— The principle— I understand— The legal principle for which you're arguing doesn't depend on the facts of a specific case. Right, and I would tell— I'm sorry, but I didn't mean to interrupt Judge Kirsch. No, no. I was only going to say what—but even—I was going to comment on something that Judge Flom said. I thought by the summer of 2018 he was identifying in written communication that he had been a victim of discrimination. That is correct, Your Honor, but that is not the failure to promote claim that we're talking about here. The failure to promote claim based on race discrimination could not accrue until he knew that Josh Gildee had been promoted early to senior lecturer. That's when he knew about it. Even though he believed that there had been discrimination before that for our claim for failure to promote, that did not happen until April of 2019. What are we supposed to do with the fact that he didn't even apply for early promotion? All he did was talk to someone who said, you know, either—I don't know exactly what was said. I wasn't in the room, but I don't—I think you should stay on the regular track or I'm not going to promote you. If we were to extrapolate from that that that's enough for an application, whoa, you know, doesn't that expand Title VII law far beyond where we've gone in the past? Well, and I would disagree with that. I mean there are cases in this court where when the reason you don't apply is because of discrimination, and that's the Lloyd case. It's not necessary to apply for promotion in every case. But wait, if that's your argument, that totally knocks out your failure to promote claim because you can't say he didn't know of the discrimination in 2013, but he failed to apply because of the discrimination. No, I understand. What I'm saying is the—we're saying that the department chair discouraged him from applying, and there had been no one, and that is the testimony in the Evanson record, is that no one had ever received an early promotion without the support of the department chair. And the department chair said to him, I'm not supporting you. And an individual is not required to do an act that's futile. And this would be—it would have been a futile act for him to apply for early promotion when the department chair is saying, I will not support you, and I do not support you. And we believe that his failure to support him was a discriminatory act. And that's what I'm talking about. Why he didn't apply is because that was the discriminatory act. And then he did not apply because he did not have the department chair's support. And the evidence is undisputed that no one ever went up and was successful for early promotion without the support of the department chair. So that's the reason why he didn't apply and why we think that he can still bring a failure to promote claim even though he didn't actually apply for the position because he would have had he had the department chair's support, just as Mr. Gildee did. And in addition, I would point out, Your Honor, is that there's more than just the failure to promote claim here, which is then equitable pay claim, which is not affected by any statute of limitations and which has not been challenged on that basis. So there would still be a claim remaining. No statute of limitations at all? Well, I wouldn't say there's no statute of limitations at all, but with the revisions to Title VII with the paycheck rule, every time you get paid and your pay is discriminatory, that allows you to bring a claim going back two years. But the claim that it's discriminatory relies on the assertion that the lack of promotion in 2013 is discriminatory. Well, it doesn't necessarily – That's where we need to start. It doesn't just rely on that because we're looking at a period of time when Professor Palmer, as a senior lecturer, was making less than Josh Gildee as a lecturer. With the comparison of time that we're looking at and going back two years from when he filed his charge of discrimination, he's allowed to go back and show that that pay was discriminatory and that that claim exists because it doesn't start – I mean, every time he gets a paycheck, he's allowed to bring that claim because the pay is discriminatory. And the comparison between the two of them during that period of time, during the two years before Professor Palmer filed his charge of discrimination, is the period of time we're looking at and Josh Gildee as a lecturer was making more than Professor Palmer as a senior lecturer. So we believe that the equitable pay claim continues even though the – even if the failure to promote claim were found to be untimely, which obviously we dispute and disagree with. The other thing that we believe that is important in this case is that the court gave unreasonable inferences in favor of IU on summary judgment, which it is not permitted to do and should not do. It should look at the most persuasive story in favor of the plaintiff in bringing the claim. And there were numerous things that were disputed that the court nonetheless found on summary judgment. For example, one of the issues was the growth of the academy by Professor Gildee when he was a lecturer. And the dean of the law school, Dean Kessner, said that that growth was based on student involvement, but others said it was based on Mr. Gildee's involvement. And so those facts were disputed and the court still found that that in favor of IU on that issue saying that that was the reason why Professor Gildee was promoted early instead of Mr. Palmer and the reason why Mr. Palmer was not promoted. They also found that the court also found that the teaching opportunities that were provided to Mr. Gildee and not provided to Mr. Palmer, that that was not discriminatory and that there were no issues of fact there. And we believe that that is definitely issues of fact because Mr. Gildee was provided more opportunities to teach, and therefore that was then used as a basis for his promotion. And that was held against Professor Palmer as to why he was not allowed to be promoted early. Thank you very much, Ms. Blevins. Thank you, Your Honor. Mr. Terrell, before you begin, I noticed that we have several people in court who are not wearing masks. The rules of this building require masks in all public places. You must put masks on or leave. Mr. Terrell. Good morning, and may it please the court. Michael Terrell, Uptaft's detainees in Hollister on behalf of the Board of Trustees of Indiana University. The plaintiff has brought two claims against Indiana University, a failure to promote and a pay inequity claim. Your Honor is correct that the failure to promote claim is clearly untimely by more than six years. Any effort to rely on the doctrine of equitable tolling, even if that were to apply, would also fail because it's undisputed that the plaintiff in February of 2019 sent an email to the executive associate dean and in that email, the plaintiff was complaining of discrimination relating to his early promotion. And that's when Professor Gildee's announcement that he was going up came about. And in that same email, the plaintiff referenced an August of 2018 telephone call with that executive associate dean. And in that phone call, he referenced the fact that he was complaining of discrimination, blatant discrimination was his words, relating to his early promotion. So even if you ignore the six-year time span between when he was discouraged from seeking early promotion and when he actually filed his charge of discrimination in May of 2019, he clearly was not only suspecting discrimination, but he was alleging discrimination more than nine months before he filed. At a minimum, he was alleging discrimination more than three months before he filed when he sent that email to the executive associate dean. Even under equitable tolling, even if that were to apply to this case, nine months and three months is well outside what is permitted. This court has made it clear that in measuring a reasonable time for equitable tolling, you look at days and at most weeks, but not months and years. Even if you look at the time that Professor Gildee actually received his early promotion on April 9 of 2019, that's still more than a month before the plaintiff filed his charge of discrimination. Again, if equitable tolling even applied in this case, that would still fall outside of that doctrine. I asked Ms. Blevins whether she was aware of any case in which a later hire, events involving a later hire were used to justify equitable tolling. And she said no. Have you done that search? Me personally, no. My office, I assume, yes. You assume, but you don't know. I'm not aware of any case along those lines, Your Honor. Yeah. One can be not aware of things even though they exist. I don't disagree with that. Okay. Now, there was also a question from Your Honor regarding the fact that he never even applied for the promotion. And plaintiff's counsel indicated that he was discouraged from applying. And in their brief, they cited a couple of cases out of this court, Lloyd v. Phillip Brothers and Bowling v. Kurtz Paramedics. But in those cases, the plaintiffs were not discouraged from applying. They were prevented from applying by the very discrimination they were alleging. In this case, the plaintiff had every right to proceed with his early promotion. The chair was only one vote. But more importantly, the plaintiff never presented any evidence that the chair's recommendation to him was somehow the byproduct of a racial animus as opposed to a sincerely held belief that the plaintiff wasn't ready for the early promotion. Indeed, the plaintiff testified in his deposition that he has no idea whether the chair's recommendation to him would have been different had he not been an underrepresented minority. Regardless, the failure to promote claim fails for those reasons and also fails because the comparator, Professor Gildee, was not, as a matter of law, similarly situated to the plaintiff. And how do we know that? When they were both eligible for early promotion, they had the following significant differences in their credentials. Professor Gildee had taught 96 hours when he went up. Now, that sounds like an argument on the merits rather than a ground for summary judgment. I believe, Your Honor, it does get to the point of whether they're similarly situated because these are undisputed facts. It is undisputed that one person taught more or had different experience. Whether that justifies a difference in treatment is the thing that's disputed and on which district judges aren't supposed to draw inferences at the summary judgment stage. So you might want to avoid this line of argument. Well, the distinction, though, here, Your Honor, is these are undisputed facts showing that there truly is a significant difference in their overall qualifications. And because of those differences in their overall qualifications, Your Honor, they are, as a matter of law, not similarly situated. And, for example— I have a different question. Did you ever argue in the district court that it is inappropriate to compare oneself to the rival who received the best treatment? This seems to be a faculty of more than 40 instructors, all in marketing. And it's inevitable that somebody of those 40 will get the best treatment. That's just the way numbers work. Is it ever appropriate to compare oneself to the best? I ask that question because, by that standard, all of the white members of the department also are victims of race discrimination because they were treated less than the best. But that's just inevitable. My problem is I don't see how it bespeaks race discrimination that some people are treated less than the best. Everybody, other than the best, is treated less than the best. That's my problem. Well, and I don't disagree with that, Your Honor, and when you— But I asked you if you ever made that argument. I was spelling out the argument to see whether it has been made in this case because I didn't see it in your brief. We did make that, Your Honor, at the summary judgment level and also on appeal. We made the argument that there was a case out of the Fourth Circuit that addressed that specific point that when you have an outlier, like Professor Gildee, who received— The fact that in every distribution, somebody is at the extreme end of each part of the distribution. You don't need to use words like outlier. But your point is well taken that Professor Gildee, in fact, did receive higher percentage raises than all of the lecturers within the marketing department, not just the plaintiff. One thing that makes this pay and equity claim all the more remarkable, Your Honor, is that the plaintiff received the highest base salary throughout his employment of all of the lecturers, including Professor Gildee. So his claim is Professor Gildee received higher percentage raises than he received. And as you just mentioned, Your Honor, he not only received higher percentage raises than the plaintiff, he received higher percentage raises than all of the lecturers in the department. And the chair testified why he recommended those higher raises. He testified that he recommended those because Professor Gildee was the director of the most prestigious academy at the Kelley School. He had taught consistently the heaviest load of classes. He taught the widest variety of classes and consistently received the highest marks of all of the lecturers within that department. The plaintiff, for purposes of summary judgment, did not present a single piece of evidence that casted any doubt on the legitimacy of the chair's recommendations for those early promotions. Presented no evidence that the chair's recommendations were somehow the byproduct of a racial animus as opposed to a sincerely held belief that Professor Gildee earned those additional raises. In fact, the plaintiff testified in his deposition that he has no insight into how raises were even set within the marketing department. Rather, the only thing he presented were his personal opinions that his qualifications earned him a higher percentage raise than Professor Gildee. But as this court has held, an employee's opinion regarding his or her own qualifications does not create a disputed fact, and it doesn't create a disputed fact within this case itself. At the end of the day, Your Honor, this is not a discrimination case. This is nothing more than the plaintiff asking this court to play the role of a personnel department and make different decisions regarding the plaintiff's promotion and compensation. The plaintiff has not presented any evidence of discrimination. The only thing he has provided are his personal opinions, faulty speculation, and a comparison with someone who unquestionably was not similarly situated to him. For all of these reasons, Your Honor, we ask that this court affirm the district court's entry of summary judgment on behalf of Indiana University. Thank you, Mr. Turrell. Thank you, Your Honor. The case is taken under advisement.